## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSHUA SCHMITT, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CHINA XD PLASTICS COMPANY, LIMITED, FAITH DAWN LIMITED, FAITH HORIZON, INC., XD ENGINEERING PLASTICS COMPANY LIMITED, JIE HAN, TAYLOR ZHANG, LINYUAN ZHAI, HUIYI CHEN and GUANBAO HUANG,<br><br>Defendant. | Civil Action No.: 1:20-cv-06028-NGG-SJB<br><br>**AMENDED CLASS ACTION AND INDIVIDUAL COMPLAINT FOR VIOLATIONS OF SECTIONS 13, 14 AND 20 OF THE SECURITIES EXCHANGE ACT OF 1934 AND CLASS ACTION CLAIMS FOR BREACH OF FIDUCIARY DUTIES**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Joshua Schmitt ("Plaintiff"), by his undersigned attorneys, alleges the following upon personal knowledge with respect to himself and upon information and belief based upon, *inter alia*, the investigation of counsel including the review of filings with the Securities and Exchange Commission and media reports as to all other allegations. Plaintiff's counsel believes substantial evidence in support of the allegations of the amended complaint will be obtained through discovery.

### NATURE OF THE ACTION

1.      This action is brought as an individual action by Plaintiff on behalf of himself against the Company and its controlling persons, for their violations of Sections 13(d) and (e), and 20(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with the issuance of materially defective proxy materials and Schedule 13Ds and Schedule 13E-3s which resulted in the approval of a cash out merger which delivered the totality of the equity of CXD to controlling insiders illegally.  It is also brought as a class on behalf of himself and other former

1

holders of the minority of common stock of China XD Plastics Company ("China XD" or "CXD" or the "Company") against the Director Defendants for their violations of Sections 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and breach of fiduciary duties owed by directors to shareholders under Nevada law and against other Defendants including Han and HD Engineering for aiding and abetting thereof and against the Buyer Group defined at ¶ 23 for breaches of fiduciary duties owned by majority owner to minority owners.

2.      The terms of the Merger were made public in a June 15, 2020, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, the Defendant Buying Group will acquire all the outstanding shares of common stock of the Company not already beneficially owned by the Buying Group for $1.20 in cash per China XD share.

3.      Thereafter, on June 22, 2020, China XD filed a Preliminary Proxy Statement on Schedule PREM14A (the "Preliminary Proxy") with the SEC in support of the Merger and on September 30, 2020 filed a definitive Schedule 14(a) soliciting Plaintiff and minority shareholder votes in favor of the Merger and the Buyer Group filed a Schedule 13e-3.

4.      In approving the Merger, the Director Defendants have breached their fiduciary duties of loyalty, good faith, due care and disclosure by, *inter alia*, (i) agreeing to sell China XD without first taking steps to ensure that Plaintiff and Class members (defined below) would obtain adequate, fair and maximum consideration through a fair process under the circumstances; and (ii) engineering the Merger to benefit China XD's founder Han and the Buyer Group without regard for China XD's public stockholders. Accordingly, this action seeks, *inter alia*, to enjoin the proposed closing of the Merger and rescinding the vote approving the Merger.

5.     In violation of federal securities laws and in further violation of their fiduciary duties, Defendants filed with the SEC and provided its public shareholders with materially deficient Proxy Statements and Schedule 13E-3s on and after June 22, 2020 in an effort to solicit stockholders to vote their China XD shares in favor of the Merger. These filings were materially deficient, deceptive and deprived China XD's public stockholders of the information required by law and which they needed to make an intelligent, informed and rational decision of whether to vote their shares in favor of the Merger. Accordingly, Defendants violated Sections 13 and 14 of the Securities Exchange Act of 1934 and breached the various fiduciary duties they owed to Plaintiff and minority shareholders.

6.     For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 13, 14(a) and 20(a) and 20(b) of the Exchange Act, based on Defendants' violation of Rule 14a-9 (17 C.F.R. 240.14a-9) and seeks damages.

7.     Plaintiff's Section 13 claims arise out of the Defendants' violations of Section 13(d) and 13(e)(3) and Rule 13e-3 thereunder which apply to this transaction. Under that statute, Defendants were required to make detailed in-depth disclosures as itemized under the statutes rules and interpretive guidance and the common law. As detailed below, the Proxy and Schedule 13E-3s omits and/or misrepresents material information concerning, Items 7, 8 and 9 of Schedule 13E-3.

8.     The actions of the Defendants, as described herein, constitute breaches of the fiduciary duties owed to the minority shareholder and/or aiding and abetting fiduciary breaches of Director Defendants and majority owners. Plaintiff's claims against the Defendants for the Directors Defendants' breach of fiduciary duties arises out of (i) the Director Defendants' bad faith in engaging in the process leading to the Merger Agreement and recommendation of a

3

shareholder vote in favor of the Merger; (ii) the Director Defendants' bad faith breach of duty of candor in issuing a series of materially false and misleading and incomplete statements in proxies used to solicit the votes for the merger; (iii) the Director Defendants' breach of duty of loyalty in allowing the controlling shareholders Defendants Han and XD Engineering Plastics Limited ("XD Engineering") to suppress the value of CDX prior to the Merger in advance of cramming down a squeeze out merger through an unfair process at an unfair price.

9.      The Buying Group violated their fiduciary duties as majority owners and aided and abetted other Defendants fiduciary breaches.

## JURISDICTION AND VENUE

10.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violation of Section 14(a) and 20(a) of the Exchange Act.  In addition, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the state law claims.

11.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, at an office it maintains in Flushing, Queens or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice. The Company maintains U.S. offices in Flushing, New York at 13620 38th Avenue, Suite 3A-1, Room 105, where, China XD represents, its CFO Defendant Zhang can be reached at (212) 747-1118.  The exercise of jurisdiction over all of the Defendants by this Court is permissible under traditional notions of fair play and substantial justice.

4

12.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Defendant China XD is a resident of the city and state of New York.

## THE PARTIES

### A. Plaintiff

13.     Joshua Schmitt ("Plaintiff") has held China XD stock at all relevant times. Plaintiff is the beneficial and record owner of 52,327 shares of China XD stock. Plaintiff is a resident of Waterloo, Iowa.

### B. Defendants

14.     Defendant China XD engages in the research, development, manufacture, and sale of modified plastics primarily for automotive applications in the People's Republic of China, and Dubai, the United Arab Emirates. China XD is incorporated under the laws of the State of Nevada and maintains a place of business in Flushing, New York. It principal place of business is at No. 9 Dalian North Road, Haping Road Centralized Industrial Park, Harbin Development Zone, Heilongjiang Province, P.R. China. Shares of China XD common stock are traded on the Nasdaq under the symbol "CXDC."

15.     Defendant Jie Han ("Han") is the founder of CXDC and has been a Director of the Company at all relevant times. In addition, Han serves as the Company's Chief Executive Officer ("CEO") and Chairman of the Board. Through Defendant XD Engineering Plastics Company Limited, an entity wholly owned by Han, Han owns approximately 50.1% of the Company's outstanding Common Stock and control shares of Company's Class A Common Stock and Class B Common Stock *representing approximately 70% of Company's total voting power.*

16. Defendant Taylor Zhang ("Zhang") has been a director of the Company at all relevant times. In addition, Zheng serves as the Company's Chief Financial Officer ("CFO").

17. Defendant Linyuan Zhai ("Zhai") has been a director of the Company at all relevant times.

18. Defendant Huiyi Chen ("Chen") has been a director of the Company since January 2, 2020.

19. Defendant Guanbao Huang ("Huang") has been a director of the Company since January 2, 2020.

20. Defendants identified in ¶¶ 15 – 18 are collectively referred to as the "Individual Defendants."

21. Defendant XD Engineering Plastics Company Limited ("XD Engineering") is wholly owned by Defendant Han and is the beneficial owners of 33,065,054 shares of common stock approximately 50.1% of China XD's common stock. In December 2019, XD Engineering purchased approximately 500,000 shares of China XD common stock at a price of $2.04 per share.

22. Defendant Faith Dawn Limited ("FDL") is a Limited Liability Company incorporated under the Law of the Cayman Islands in Florence. The ultimate owner of FDL is Defendant Han. Han is FDL's sole director. Han is sole director of the sole shareholder of FDL.

23. Defendant Faith Horizon, Inc. ("Merger Sub") is a Nevada corporation and wholly owned subsidiary of Faith Dawn Limited created to effectuate the Merger Transaction.

24. Defendants FDL, Merger Sub, Han and XD Engineering are collectively referred to as the "Buyer Group."

## CLASS ACTION ALLEGATIONS

25.     Plaintiff brings this action pursuant to Fed. R. Civ. P. 23b(2) and b(3) on behalf of himself and the other public shareholders of CXD (the "Class"). Excluded from the Class are Defendants herein and any person, firm trust, corporation, or other entity related to or affiliated with any Defendant.

26.     This action is properly maintainable as a class action because:

(a)     The Class is numerous that joinder of all members is impracticable. As of October 2017, there were approximately 72 million shares of CXD common stock outstanding, of which approximately 35,000,000 shares were held by shareholders not affiliated with the Buyer Group and are held by hundreds of individuals and entities scattered through the country. The actual number of public shareholders of CXD will be ascertained through discovery;

(b)     There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including but not limited to the following:

(i)     whether the Director Defendants violated their fiduciary duties of loyalty;

(ii)     whether Defendants Han and XD Engineering, as majority owners of CXDC, violated the fiduciary duties to stockholders and whether other Defendants aided and abetted the fiduciary breaches by other Defendants;

(iii)     whether disclosures made to Plaintiff and the class were materially misleading in breach of the duty of candor;

(iv)     whether Plaintiff and the class are entitled to damages.

(c)     Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interest of the Class;

(d)     Plaintiff's class claims of breach of fiduciary duty are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

(e)     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

(f)     Defendants have acted on grounds generally applicable to the class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

(g)     A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## SUBSTANTIVE ALLEGATIONS

A.     **The Company**

27.     China XD is a research, development, manufacturing company and seller of modified plastics primarily for automotive applications in the People's Republic of China, and Dubai, the United Arab Emirates.  The Company also offers engineered plastics and environment-friendly plastics for use in oilfield equipment, mining equipment, vessel propulsion systems, and power station equipment; and polymer composite materials.  Its products are also used in high-speed railways, airplanes, ships and electronic appliances.

28.     China XD has a thriving, profitable business, but has been temporarily adversely impacted by the pandemic. The Company has been focusing on the development and production of high polymer materials for more than 30 years and was listed on Nasdaq in 2009 as the first high polymer material enterprise in greater China. China XD has more than 600 customers. The Company's main products have occupied the first place in automobile production of polymer materials area in the past five years in China.

29.     In 2016, China XD was included in the Top Hundred Corporations of Chemical Industry in China (no. 40) by CPCIF.

30.     Prior to onset of the pandemic, China XD was reporting improving financial and operational results and expansion into non-auto applications. In the Company's Full Year 2019 Financial Results Press Release, June 1, 2020, Defendant Han spoke on the Company's 2019 financial success saying, "Since the second quarter of 2019, we have achieved revenues by increased sales of new categories of higher-end products of PA66 and PA6 produced with high-priced raw materials with higher selling price of domestic market; and sales of high-priced raw materials with higher selling price in domestic market; and sales of high-priced semi-finished goods in domestic market to accelerate inventory turnover and replenish operating funds. We are pleased to see an overall increase of 45.9% in the average RFB selling price of our products, partially offset by the decreased sales volume of 18.8% for the year ended December 31, 2019. At the same time, the Company has achieved a rapid increase of customer orders in non-automobile applications, evidenced by our stable sales growth in several domestic regions."

31.     Despite this positive outlook and recent financial success, Han and XD Engineering, facilitated by the Director Defendants, have caused China XD to enter into the Merger at a price per share of $1.20 per share to minority shareholders that is nearly 50% less

than Engineering XD's December 2019 purchase of shares from certain of its officers and directors.

32. Moreover, prior to the approval of the merger, China XD previously written off $62 million of accounts receivable now recoverable. Despite having previously provided an allowance of US$62.8 million on the Company's balance sheets as of December 31, 2019, for overdue accounts receivable from the major customer in UAE, due to the customer failing to make payments under the agree extended repayment plan, the Company more recently stated in a June 1, 2020 conference call on its Full Year 2019 Financial Results that the Company believes that it will be able to collect on the aforementioned debt "sometime later this year." Clearly this indicates that the Company's financials are doing even better than previously reported.

33. Prior purchases of China XD stock by insider XD Engineering were almost 50% higher than the Merger Price agreed by the Special Committee. On December 11, 2019, XD Engineering purchased an aggregate of 554,923 of common stock of China XD from "certain employees and directors of China XD" at a purchase price of $2.049 per share pursuant to a Stock Purchase Agreement. Given the identity of the parties to the Stock Purchase Agreement, they are alter ego's of China XD and accordingly, in substance, this transaction is an "issuer" purchase that was required to be disclosed in the Proxy Materials and Schedule 13E-3s.

**The Process Leading To The Merger Was Unfair To Unaffiliated Shareholder**

34. Defendant Directors, as fiduciaries of the stockholders, had an obligation and duty to ensure that minority shareholders were treated fairly and not disadvantaged by majority shareholders exercise of majority power in an oppressive way. Such duties required the Directors Defendants to take all reasonable steps to ensure that any extraordinary transactions

with the Majority Owner be conducted through a fair process and executed at a fair price to maximize shareholder value.

35.     As detailed in the Preliminary Proxy and Proxy, the process deployed by the Individual Defendants was flawed and inadequate, was conducted for the self-interest of the majority owner Defendants, namely Defendants Han and XD Engineering with only one concern in mind – to effectuate a sale of the Company to the Buying Group at an unfairly low price.

36.     First, while the Preliminary Proxy and Proxy indicate that a Special Committee of three "disinterested and independent" directors, consisting of Defendants Zhai, Chen and Huang (which was chaired by Chen), was appointed, the Preliminary Proxy and Proxy make clear that ultimate decision making authority for both the sales process, and all Company action, rested solely with Han because the Special Committee had no power other than to "recommend" to the Board. Thus any negotiating power or power to "reject terms" was illusory and ineffective.

37.     Two of the three members of the Special Committee were new directors who had only been appointed to the Board in January 2020. Thus, a majority of the Special Committee was not familiar with China XD operations, financial condition or prior attempts by certain members of the Buyer Group to take China XD private.

38.     The Special Committee was not independently or properly advised because Duff & Phelps, the Special Committee's financial advisor, (I) assumed (but did ascertain) that all information it received from management and CXDC were "reasonably prepared and based upon the best currently available information and good faith judgment of persons furnishing same." Proxy at B-4 and (ii) and assumed but did not verify that representations of Management were "accurate and not misleading in all material respects and [did] not omit material facts" and (iii) "assumed that there has been no material change in assets, liabilities, financial condition, results

11

of operations, business or prospects of the Company since the most recent financial statements."
*Id.*

39.     Duff & Phelps and the Special Committee failed to apply the most commonly used method of valuing publicly traded companies: the P/E valuation metric. Had they done so they would have known that a P/E multiple of 15 applied to the 2025 estimated earnings would yield a share value in excess of $25 per share, which even if discounted back to present value at CXDC's average weighted cost of capital or cost of debt would still be far in excess of $2 per share. Had Duff & Phelps used a price to earnings to growth valuation metric the result would similarly been in excess of $2 per share based upon historical growth and reasonable assumptions of the resumption of such growth rates after the pandemic subsided.

40.     Reliance upon Duff & Phelps analysis and opinion by the Special Committee was unreasonable and misplace because Defendant Directors knew that certain transactions involving sale of major China XD assets in January 2020 at an implied equity valuation of more than $2 per China XD share, had not appeared in the "most recent financial statements" and they knew that the previously written off $63 million receivable (approximately $.85 per common share) had not been included in any "most recent financial statements."

41.     The Special Committee Defendants had no power to approve or reject any proposal made by the Buyer Group; it could only make recommendations to the full board as to any decisions. The full board consisted of only five members, two of whom were insiders with material financial interests in seeing the merger take place. Accordingly, the full board did not grant the Special Committee any actual power and thus deprived it of any negotiating leverage. The Special Committee did not even attempt to solicit expressions of interest for acquisition of China XC or explore alternative, to going private or as Duff & Phelps to consider other strategic

alternatives or even to obtain a valuation of China XD that was <u>not</u> based on conflicted management's projections of results.

42.     The Special Committee conducted so little due diligence, exploration of alternatives and negotiation with the Buying Group that final Merger Agreement was signed on June 15, 2020, a mere 35 days after the Special Committee had retained financial and legal advisors on May 10, 2020.  The Proxy confirmed this stating "no attempt was made to contact third parties who might otherwise consider acquisition of the company special committee."  The failure of the Special Committee or its advisers to contact potentially interested acquirors was a failure to conduct proper due diligence and a breach of fiduciary duty.

43.     Moreover, the Special Committee's financial advisor did not even receive management's financial projections (critical for Duff & Phelp's valuation analysis) until shortly after May 25, 2020.  Thus, the financial advisors' analysis time was an unreasonably and unreliably short period of approximately 20 calendar days.

44.     The Special Committee even failed to follow its counsel advise against letting the Buyer Group use China XD's own cash reserves to fund the purchase of unaffiliated shares  and failed to heed its counsel's advice to negotiate for majority of the minority voting provisions or even use the threat of non-recommendation to extract a higher price.  Finally in the Merger Agreement, the Board agreed to bar China XD from soliciting any other offers.

45.     On June 15, 2020, China XD and the Buyer Group issued a joint press release announcing the Merger.  The press release stated, in relevant part:

> **HARBIN, China, June 15, 2020 /PRNewswire/ - China XD Plastics Company Limited (NASDAQ: CXDC) (the "Company"),** one of China's leading specialty chemical companies engaged in the development, manufacture and sale of polymer composite materials primarily for automotive applications, today announced that it has entered into a definitive

13

Agreement and Plan of Merger (the "Merger Agreement") with Faith Dawn Limited ("Parent") and Faith Horizon Inc. ("Merger Sub"), a Nevada corporation and a wholly-owned subsidiary of Parent.

Parent is ultimately wholly-owned by Mr. Jie Han (the "Chairman"), the chairman of board of directors and chief executive officer of the Company. The Chairman and XD. Engineering Plastics Company Limited, an wholly-owned by the Chairman (the "Chairman SPV", collectively with the Chairman, the "Rollover Stockholders") currently beneficially own 33,065,054 shares of common stock, par value $0.0001 per share, of the Company (the "Common Share") and 1,000,000 shares of series B preferred stock, par value $0.0001 per share, of the Company (the "Preferred Shares"), representing approximately 70% of the voting power and approximately 50.1% of the share capital of the Company. Parent, Merger Sub and the Rollover Stockholders are collectively referred to as the "Buyer Group".

Pursuant to the Merger Agreement, Parent will acquire all of the outstanding Common Shares of the Company for a cash consideration equal to US$1.2 per share (the "Merger Consideration"). This amount represents a premium of 25% over the Company's closing price of US$0.96 per share as quoted by NASDAQ Global Market (the "NASDAQ") on May 7, 2020, the last trading day prior to the date that the Company received a non-binding "going private" proposal from members of the Buyer Group. The Merger Consideration also represents an increase of approximately 9.1% over the US$1.1 per share initially offered by the Buyer Group in their initial "going-private" proposal on May 7, 2020 and a premium of approximately 15.4% over the Company's closing price of US$1.04 per share on June 12, 2020, the last trading day prior to this press release.

The Company's board of directors, acting on the recommendation of a special committee of independent and disinterested directors (the "Special Committee"), unanimously approved the Merger Agreement and the transactions contemplated by the Merger Agreement, including the Merge, and resolved to recommend that the Company's stockholders vote to authorize and approve the Merger Agreement and the transactions contemplated by the Merger Agreement, including the Merger. The Special Committee, which is composed solely of independent directors of the Company who are unaffiliated with any member of the Buyer Group or management of the Company, exclusively negotiated the

terms of the Merger Agreement with the Buyer Group with the assistance of its independent financial and legal advisors.

46.     The primary beneficiaries of the Merger are the Buying Group, not the Company's public stockholders. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of China XD in the form of continued employment, board seats, the ability to participate in China XD's recovery as the auto industry outlook worldwide continues to improve despite the pandemic and a grant of 1,800,000 Common Stock Shares to be split among four directors (not including Han) under a 2020 Stock Issuance Plan approved by a shareholder vote in February 2020. While Han and XD Engineering were formulating a "plan" to take the Company private which was not disclosed in the Proxy soliciting a vote in the 2020 Stock Issuance Plan. The Director Defendants who had recently joined the board in January 2020 knew, or had reason to know, that the proposal of the 2020 Stock Plan was a quid pro quo.

## COUNT I

### PLAINTIFF'S INDIVIDUAL AND CLASS CLAIM FOR INJUNCTIVE AND COMPENSATORY RELIEF

### (Against CDX For Violations Of Section 14(a) Of The Exchange Act And Rule 14(a)-9 Promulgated Thereunder For False And Misleading Statements In Proxy Materials)

47.     Plaintiff incorporates by reference and realleges each and every allegation contained set forth above, as though fully set forth herein.

48.     Section 14(a)of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as

the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

49.     SEC Rule 14a-9 prohibits the solicitation of shareholder votes in proxy communications that contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240. 14a-9.

50.     CDX issued the Proxy Materials with the intention of soliciting shareholder support for the Merger.

51.     The Proxy Statements soliciting the merger were defective and in violation of SEC Rule 14 and Rule 14a-9 because they contained untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. The stockholders vote was required for approval of the merger.

52.     In addition, the Proxy fails to provide all information required under Rule 13e-3 (see Count II below, incorporated herein by reference). As a result, such omissions and half-truths make the Proxy in violation of Section 14(a).

53.     The misrepresentations and omissions in the Proxy Materials for the Merger were material to Plaintiff and the class members who were solicited to vote in favor of the merger agreement by defective Proxy Materials. This constituted loss and harm to their voting rights.

54.     As a direct and proximate result of issuing the defective Proxy Materials for the Merger, Plaintiff and the other class members are now required to surrender their stock for $1.20 per share with no dissenters' rights.  Plaintiff and the other class members are entitled to compensatory relief and/or injunctive relief to unwind the shareholder vote and prevent Buyer Group from consummating the Merger.

55.     In addition, Defendant China XD's proxy statement soliciting votes in favor of the 2020 Stock Issuance Plan was materially false and misleading in failing to disclose (i) material transactions by China XD in anticipation of a taking private; and (ii) Han and XD Engineering's "plan" to take China XD private.  The shareholders approved the 2020 Stock Issuance Plan which led to a 3.6 million share grant to Han and directors before the Merger thus gaining for them a windfall of approximately $4.3 million in merger consideration.

56.     As a result, the 2020 Stock Issuance Plan was approved in violation of Section 14(a).

57.     Plaintiff seeks an order rescinding the vote for the Merger, enjoining its closure and an order rescinding the vote on the Stock issuance Plan and forfeiture of all shares granted thereunder to insiders in the August 2020 Stock Issuance Plan and the award of 3.6 million shares to directors made in August 2020 as a quid pro quo for the Director Defendants approval of the merger.

58.     Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### PLAINTIFF'S INDIVIDUAL CLAIM FOR
### INJUNCTIVE AND COMPENSATORY RELIEF

#### (Against All Defendants For Violation Of
#### Section 13(E)(3) Of The Securities Exchange Act Of 1934)

59.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

60.     Section 13(e)(1) makes it unlawful for an issuer which has a class of registered securities to "purchase" [including an acquisition pursuant to a merger] any equity security of the issuers if such purchase contravenes the rules and regulations of the Commission including the rules set forth in Rule 13(e)(3).

61.     Rule 13e-3 was promulgated to provide for "investor protection" with respect to transactions by issuers [such as China XD] or their affiliates [such as Buying Group] which would result in one or more classes of the equity securities of the issuer no longer having the attributes of public ownership.  "Because of the potential for harm to security holders, particularly small investors, and the need for full and timely disclosure, the Commission [SEC] continues to believe that Rule 13e-3 is necessary and appropriate for the public interest and the protection of investors." Securities Exchange Act of 1934, Release No. 17719, April 13, 1981, 1981 SEC LEXIS 1647 *2-3. Interpretative Release Relating to Guiding Private Transactions Under Rule 13e-3.

62.     Rule 13e-3's comprehensive disclosure scheme applies to "Rule 13e-3 transactions" as defined by Rule 13e-3(a)(3).

63.     Rule 13e-3(a)(3) defines a Rule 13e-3 transaction as, inter alia, a solicitation subject to Regulation 14A (under Section 14 of the Securities Exchange Act of 1934), Rule 13e-3(a)(3)(i)(C) or any acquisition pursuant to a merger (Rule 13e-3(a)(3)(i)(A) and definition

13(a)(2)(ii) and which has the effect, inter alia, of "causing any class of equity securities of the issuer to be held of record by less than 300 persons. Rule 13e-3(a)(3)(ii)(A).

64. The Merger is a Rule 13e-3 transaction because (1) it involves a proxy solicitation and (2) elimination of the public shareholders; and (3) none of the Rule 13e-3(g) exceptions are applicable.

65. At all relevant times the XD Engineering and Han constituted a "group" under Section 13. Accordingly, the group members, separately or filing jointly, were required to, as beneficial owners of more than 5% of China XD's common stock, amend the outstanding Schedule 13D when the group or any member of the group formed a plan to engage in a non-exempt Section 13(e)-3 transaction.

66. According to the Proxy, sometime after October 14, 2019, Han "… generally assessed strategic alternatives, including but not limited to, a plan that would maintain the Company's NASDAQ listing and, alternatively a going private transaction." Proxy at 22. The Proxy further disclosed that in April and May 2020, Han "… seriously considered strategic alternatives." *Id*. None of the "strategic alternatives" were identified nor described in any way but it may be reasonably inferred that among the "seriously considered strategic alternatives" was a going private because listed in the Proxy as one of the "primary factors `... that influenced consideration of strategic alternatives" was "... the increasing expenses and burden to comply with U.S. federal laws, including U.S. securities laws." *Id*. That constituted a "plan" which the Buying Group was required to disclose.

67. It was not until May 11, 2020 however that Han and XD Engineering filed its Amendment No. 5 to the Schedule 13D although the conditions for an amendment had existed for

months. Han and XD Engineering's failure to file an amendment sooner than May 11, 2020 constituted a violation of Section 13 reporting requirements.

68.      Under rules applicable to Schedule 13E-3 filing content, including Item 9 of Schedule 13E.e-3 and Item 10-5 of Regulation M-A, China XD, Han and XD Engineering were required to disclose "reports, opinions, appraisals and negotiations" materially related to the take private proposal. That mandate embraces both such materials whether written or oral. If any such information was received in non-written form, the parties to the merger were obligated to "summarize that information in detail in the disclosure document provided to Plaintiff and class members. *See* Compliance and Disclosure Interpretations Going Private Transactions, Exchange Act Rule 13E.e-3 and Schedule 13E-3, Last Update January 26, 2009, Questions and Answers of General Applicability Question 117.06 citing Item 1015(b)(6) of Regulation M-A [January 26, 2009]. Neither the Proxy nor Schedule 13e-3 contain all the required materials.

69.      Duff & Phelps Fairness Opinion identifies a "Management Representation Letter" ("MRL") which contains "representations as to historical financial statements for the Company and the Management Projections and the underlying assumptions of such projections." Proxy at B-3. None of these materials are disclosed.

70.      Defendants also failed, in violation of disclosure obligations under Sections 14 and 13 to make any disclosures of reports, opinions, appraisals and negotiations which according to the Proxy occurred on May 19, 2020 (Proxy at 24); May 21, 2020 and May 22, 2020 (*Id.*); May 25, 2020 (Proxy at 25); May 28, 2020 (*Id.*); June 1, 2020, June 4, 2020, June 5, 2020, June 9, 2020, June 11, 2020, June 12, 2020 and "during the course of the next few days (Proxy at 26); June 14 and June 15, 2020 (Proxy at 26).

71. Defendants China XD, Han and XD Engineering also failed to make disclosure of any appraisals, opinions or reports generated or received in connection with the January 22, 2020 subsidiary sale. On January 22, 2020, China XD entered into a transaction, whereby China XD sold equity interests of 36.21% and 38.08% in two of China XD's wholly owned subsidiaries for a total of approximately $45.9 million which constituted China XD's main operating subsidiaries. At the time of this transaction, China XD was trading at approximately $2.10 per share giving its approximately 66 million common shares a market value of approximately $135 million. The January 22, 2020 transaction appears to have been consummated at a price that implied a substantially higher value for China XD stock compared to the Merger Price, *i.e.* since China XD was trading at approximately $2.20 per share in January 2020, 39% of China XD's two main subsidiaries could have had valuations of $54 million or more, thus implying a fair value of China XD's equity in excess of $2 per share.

72. While management did disclose that the Company "estimates 5-15% recovery rates for machinery and equipment" and "5-15% recovery rates for prepaid construction fees," this analysis was flawed and depressed the valuations because the recovery value of the machinery and equipment should have been considered on a "where is" basis that contemplates the machinery and equipment to stay in place and usable by a purchaser.

73. The Schedule 13e-2 also violated SEC "instructions." The SEC's instructions accompanying Schedule 13e-3 also contain other requirements for the content of Schedule 13e-3 (and derivatively proxy solicitations under Rule 14(a), including:

- Avoidance of "a conclusory statement" such as "the transaction is fair to unaffiliated security holders" Instruction to Item 8a.

- Issuer "discuss in reasonable detail the material factors upon which the belief statement in Item 8(a) is based" Instruction to Item 8b including "an analysis of the extent, if any, to which such

21

belief is based on the factors set forth in Instruction 1 to paragraph (c)(d) and (e) of this Item and Item 9, including "(i) current market price; (ii) historical market prices; (iii) net book value; (iv) going concern value; (v) liquidation value; (vi) the purchase price paid in previous purchase; (vii) any report, opinions or appraisal described in Item 9.

- An issuer can rely on an investment banker's opinion, but the opinion must fully analyze the factors enumerated in Item 8b as well as be "expressly adopted by the issuer." Exchange Act Release No. 34-17719 at 13, 245-42.

The Proxy and Schedule 13e-3 make only conclusory, non-specific disclosures of these matters. Accordingly, the Proxy and Schedule 13e-3 are deficient and also violative of Sections 13 and 14 in this regard.

74.     Defendants Han and XD Engineering, who collectively own 70% of CXDC's voting power did not disclose the December 2019 purchase of CXDC stock from directors and employees at $2.049 per share even though issuer prior purchases are required to be disclosed in a Schedule 13e-3.

## COUNT III

### (Against The Buyer Group Defendants For Violations Of Section 20(a) Of The Exchange Act)

75.     Plaintiff incorporates by reference and realleges each and every allegation contained set forth above, as though fully set forth herein.

76.     The Buyer Group Defendants acted as controlling persons of China XD within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions and due to their participation in and/or control of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Materials filed with the SEC, had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and

dissemination of the Proxy Materials that Plaintiff contends are materially incomplete and misleading.

77.     The Buyer Group Defendants provided with or had unlimited access to copies of the Proxy Materials and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

78.     In particular, the Buyer Group Defendants or members hereof had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, are presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.

79.     By virtue of the foregoing, Buyer Group Defendants have violated Section 20(a).

80.     As a direct and proximate result of issuing the defective Proxy Materials, Plaintiffs has suffered damages in connection with the proposals being made in the Proxy relating to approving the Merger.

## COUNT IV

**(Class Claims Against Director Defendants For Breach of Directors Fiduciary Duties And Against The Buyer Group Defendants For Breach of Fiduciary Duties As Majority Owner)**

81.     Plaintiff incorporates by reference and realleges each and every allegation contained set forth above, as though fully set forth herein.

82.     The Director Defendants owed the minority shareholders fiduciary duties which in these circumstances required them to ensure that the majority owners did not acquire China XD at an unfair price through an unfair process or allow the Majority Owner to take unfair advantage of the minority holders.

83. As alleged in detail herein, the Buyer Group, as controlling shareholders of China XD, owed fiduciary duties to Plaintiff and other class member minority shareholders and to act fairly so as to benefit all stockholders equally and not in furtherance of the Buyer Group's personal interest or benefit.

84. The Buyer Group Defendants and Director Defendants breached their respective fiduciary duties by precluding a fair process for the sale of China XD and allowing the Buyer Group acquiring same at an unfair price.

85. As a direct and proximate result of the Buyer Group Defendants and Director Defendants' breaches of fiduciary duties, Plaintiff and minority shareholders have sustained substantial damages.

## COUNT V

### (Against The Buyer Group Defendants For Aiding And Abetting Other Defendants' Breach Of Fiduciary Duties)

86. Plaintiff incorporates by reference and realleges each and every allegation contained set forth above, as though fully set forth herein.

87. Each of the Buyer Group Defendants knowingly participated in breaches of fiduciary duty by other Defendants and thus is liable for aiding and abetting fiduciary breaches.

88. As a direct and proximate result of the breaches of fiduciary duties, Plaintiff and China XD public shareholders have sustained substantial damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment as follows:

A. Enjoining the closing of the Merger and rescinding the shareholder vote;

B. Rescinding the shareholder vote on 2020 Stock Issuance Plan and voiding the grant of 3,600,000 shares to Defendants Han and four other directors;

C.     Certifying Plaintiff's individual and class claims under Rules 23(b)(2) and (b)(3);

D.     Awarding the Plaintiff and/or public shareholders the amount of damages sustained;

E.     Awarding to Plaintiffs the costs and disbursements of this action, including reasonable attorneys' and experts' fees and expenses;

F.     Awarding Plaintiff damages from Defendants' Section 13 and 14 violations; and

G.     Granting such other and further relief as the Court deems just and proper.

Dated: February 17, 2021

SQUITIERI & FEARON, LLP


By:_/s/Olimpio Lee Squitieri_
       Olimpio Lee Squitieri
       32 East 57th Street
       12th Floor
       New York, New York 10022
       Tel: (212) 421-6492
       Fax: (212) 421-6553

# PLAINTIFF'S CERTIFICATION

I, __Joshua Schmitt__ ("Plaintiff") declares under penalty of perjury, as to the claims asserted under the federal securities laws, that:

1.   Plaintiff has reviewed the Amended Complaint and authorized its filing.

2.   Plaintiff did not purchase the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action.

3.   Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary, and Plaintiff is willing to serve as a lead plaintiff either individually or as part of a group, a lead plaintiff being a representative party who acts on behalf of other class members in directing the action.

4.   Plaintiff was an owner of China XD stock and entitled to vote with respect to the February 2020 shareholder vote and the shareholder vote on the Merger.

5.   During the three years prior to the date of this Certification, Plaintiff has not sought to serve or served as a representative party for a class under the federal securities laws.

6.   Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiffs pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court. Plaintiff understands that this is not a claim form, and that Plaintiffs ability to share in any recovery as a member of the class is unaffected by Plaintiff's decision to serve as a representative party.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this __13__ day of February 2021     _____
                                              Joshua Schmitt (Feb 13, 2021 19:08 CST)

                                              Joshua Schmitt