```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
JOSHUA SCHMITT, *individually and on behalf of
all others similarly situated*,

                        Plaintiff,                                  **ORDER**
                                                                    20-CV-6028-NGG-SJB
            *v.*

CHINA XD PLASTICS COMPANY, LIMITED, FAITH
DAWN LIMITED, FAITH HORIZON, INC., XD
ENGINEERING PLASTICS COMPANY LIMITED, JIE
HAN, TAYLOR ZHANG, LINYUAN ZHAI, HUIYI
CHEN, and GUANBAO HUANG,

                        Defendants.
-----------------------------------------------------------------X
```
**BULSARA, United States Magistrate Judge:**

Plaintiff Joshua Schmitt ("Schmitt"), Movants Timothy Loughran and Kevin Lu (collectively, "the Lu Movants"), and Movants Zhong Hao Feng, Brian Burwell, Nellai Chockalingam, and Bonmerc (haftungsbeschränkt) UG & Co. KG (collectively, "the Nevada Movants") have filed competing motions for appointment of lead plaintiff and lead counsel. The motions are denied without prejudice to renewal. The operative pleading—the First Amended Complaint—does not reflect the current status of the parties' claims; importantly, the motions for lead plaintiff are directed at this outdated pleading and fail to address a number of issues.

Schmitt states "[t]he Section 14(a) claim upon which the Amended Complaint was partially based, *i.e.* the merger vote solicited with the September 2020 Proxy[,] is now moot since the merger has been cancelled by mutual agreement." (Mem. of Law in Opp'n to Movants' Mots. for Appointment of Lead Pl. and Approval of Selection of Lead Counsel Pursuant to PSLRA 15 U.S.C. § 78U-4(a)(3)(B) dated May 21, 2021, Dkt. No. 28 at 1). Schmitt is directed to file a Second Amended Complaint reflecting this change and

omitting any extraneous or superseded claims and allegations. To the extent that claims are being omitted, renewed PSLRA notice is not necessary. However, to the extent that the Second Amended Complaint changes the class period and asserts new claims based on separate underlying facts, Schmitt must file new notice. *See, e.g.*, *Teamsters Loc. 445 Freight Div. Pension Fund v. Bombardier Inc.*, No. 05-CV-1898, 2005 WL 1322721, at *2 (S.D.N.Y. June 1, 2005) ("Courts have generally disfavored republication of notice when a complaint is amended, even where the amendment alters the class period. However, republication is generally appropriate where an amended complaint asserts new theories or legal claims." (footnote omitted)).

Thereafter, Schmitt, the Lu Movants, and the Nevada Movants may make a renewed motion for appointment of lead plaintiff and lead counsel. However, any party seeking to be appointed lead plaintiff must address the *Olsten* factors, namely,

> (1) the total number of shares purchased during the class period; (2) the net shares purchased during the class period (in other words, the difference between the number of shares purchased and the number of shares sold during the class period); (3) the net funds expended during the class period (in other words, the difference between the amount spent to purchase shares and the amount received for the sale of shares during the class period); and (4) the approximate losses suffered.

*Atanasio v. Tenaris S.A.*, 331 F.R.D. 21, 26 (E.D.N.Y. 2019) (quoting *In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 112 (E.D.N.Y. 2012) (referring to the "*Olsten* factors")). A number of parties have taken the position that the sole determinant for largest financial interest in a proxy act case is the number of shares held at given date. (*See, e.g.*, Mem. of Law in Supp. of Timothy Loughran's and Kevin Lu's Mot. to Appoint Co-Lead Pls. and Approve Proposed Co-Lead Pls.' Choice of Counsel dated May 3, 2021, Dkt. No. 22-1 at 8–9; Mem. of Law in Supp. of the Nevada Pls.' Mot. for Appointment as Lead Pls. and Approval of Selection of Counsel dated May 3, 2021, Dkt. No. 23-1 at 6 n.5). No case

stands for such a proposition; the cases cited by the parties do not so state.[1] Any movant must provide declarations attesting to facts required by the *Olsten* factors. Failure to do so will result in the denial of lead plaintiff status. Moreover, to the extent any movant asserts that financial interest should be measured as of a certain date, the movant must explain why that date is appropriate.

In addition, each movant should address specific issues in any renewed motion:

1. **The Nevada Movants**: *First,* the Nevada Movants should address the factors outlined in *Varghese v. China Shenghuo Pharmaceutical Holdings, Inc.*, regarding whether a group should be appointed lead plaintiff: "(1) the existence of a pre-litigation relationship between group members; (2) involvement of the

---

[1] For instance, *In re Bank of America Corp. Securities, Derivative & ERISA Litigation*, the only Second Circuit case cited by the Lu or Nevada Movants on this point, does not say that the number of shares held is dispositive but rather "is *another factor* that may be considered in gauging the movants' financial interest in the Section 14(a) claims." 258 F.R.D. 260, 269 (S.D.N.Y. 2009) (emphasis added). The Court analyzed the *Olsten* factors. And *Zucker v. Zoran Corp.* is unique to the Northern District of California, given the court found, "[i]n *this district*, two judges have equated 'largest financial interest' with the largest amount of potential recovery." No. 06-CV-4843, 2006 WL 3591156, at *2 (N.D. Cal. Dec. 11, 2006) (emphasis added). Again, the parties' presentation is inaccurate. The *Zucker* Court did not hold that the largest potential recovery is equivalent to the number of shares held. In choosing between two competing proposals for calculating largest financial interest, the court noted that shares hold directly affected potential recovery, and in that particular instance, the shares held would be dispositive. *Id.* at *8 ("Counsel for Zucker argued that the most applicable measure of damages would be the difference between the inflated value of the stock because of the backdating and the stock's actual value. Counsel for Middlesex argued that a more appropriate measure would be loss-of-bargain damages as applied in merger proxy cases plus compensation for any adverse consequences of keeping on the board those insiders who were involved in the alleged back dating. These are admittedly very different damages measures. Under either of them, however, the potential recovery increases with the number of shares a plaintiff bought. Thus, the candidate with the largest potential recovery would be the candidate who had bought the largest number of Zoran shares."). But the parties present the case as if it set forth a standard rule for section 14 actions, while also ignoring the fact that using potential recovery as a proxy for largest financial interest is a test used by two judges in the Ninth Circuit; here, the *Olsten* factors are the benchmark. And they provide no information about those factors.

group members in the litigation thus far; (3) plans for cooperation; (4) the sophistication of its members; and (5) whether the members chose outside counsel, and not vice versa." 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008).  *Second*, the Nevada Movants stated they "have not yet adopted a formal position on whether the Section 14(a) claim remains viable following the Buyout termination and what damages flow from any alleged misrepresentation or omission." (Nevada Pls.' Mem. of Law in Opp'n to Schmitt's and the Loughran-Lu Group's Mots. for Appointment as Lead Pls. and Approval of Selection of Counsel dated May 21, 2021 ("Nevada Movants' Opp'n"), Dkt. No. 27 at 1).  The Court will not grant lead plaintiff designation to a party who is waffling or uncertain about its theory of the case.  The Nevada Movants should indicate what position they would take.  *Third*, the Nevada Movants should outline the status of the state-court litigation in which they are involved, including the relevant factual and procedural history, the nature of the factual and legal overlap with the present case, and the status of settlement.  *Fourth*, the Nevada Movants should indicate whether they in fact own the shares referenced in their Joint Declaration.  (*See* Joint Decl. in Supp. of the Nevada Pls.' Mot. for Appointment as Lead Pls. and Approval of Selection of Counsel dated May 3, 2021, Dkt. No. 23-9 ¶¶ 10(c), 11(c), 12(c), 13(d) (stating shares were "owned or controlled")).

2. **The Lu Movants**: *First*, the Lu Movants should describe the relationship between Timothy Loughran and Kevin Lu and address the *Varghese* factors, outlined above.  *Second*, the Lu Movants should explain the statement "Movants—who collectively hold 136,678 shares *and whose largest member (Movant Lu) personally holds 116,678 shares (of which 89,516 shares are*

4

*eligible)*—have by far the greatest financial interest," including the classification of "eligible" shares and how "eligible" shares differ from other shares for the purpose of the motion. (Timothy Loughran's and Kevin Lu's Omnibus Mem. of Law in Opp'n to All Other Mots. for Appointment as Lead Pl. dated May 21, 2021, Dkt. No. 26 at 3 (emphasis added)).

3. **Schmitt**: Schmitt should address the Nevada Movants' argument that his "PSLRA certification disclosed neither individual stock purchases nor the exact number of shares he held as of September 29, 2020[.]" (Nevada Movants' Opp'n at 9).

Schmitt's Second Amended Complaint must be filed by August 16, 2021. Schmitt shall indicate whether he is filing new notice. If new notice is not being filed, any renewed motion for appointment of lead plaintiff shall be filed within three weeks of the filing of the Second Amended Complaint. Any opposition briefs shall be filed within two weeks of the motions. Replies are not permitted.

SO ORDERED.

/s/ *Sanket J. Bulsara* August 2, 2021
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York

5