UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------X
JOSHUA SCHMITT, individually and on
behalf of all others similarly
situated,

        **MEMORANDUM AND ORDER**
        20-cv-6028 (KAM)(SJB)

              Plaintiff,

    -against-


CHINA XD PLASTICS COMPANY, LIMITED,
FAITH DAWN LIMITED, FIATH HORIZON,
INC., XD ENGINEERING PLASTICS COMPANY
LIMITED, JIE HAN, TAYLOR ZHANG, LINYUAN
ZHAI, HUIYI CHEN and GUANBOA HUANG,

              Defendants.
--------------------------------------X

**MATSUMOTO, United States District Judge:**

      Plaintiff Joshua Schmitt ("Schmitt" or "Plaintiff")

commenced this action on December 10, 2020, against Defendants

China XD Plastics Company, Limited ("China XD"), Faith Dawn

Limited ("FDL"), Faith Horizon, Inc. ("FHI"), XD Engineering

Plastics Company Limited ("XD Engineering"), Jie Han ("Han"),

Taylor Zhang ("Zhang"), Linyuan Zhai ("Zhai"), Huiyi Chen

("Chen"), and Guanboa Huang ("Huang"), collectively,

"Defendants."  In the Second Amended Complaint (SAC), filed on

August 16, 2021, Plaintiff alleges, in Count One, violations of

15 U.S.C. §78n ("Section 14(a)" of the Securities and Exchange

Act of 1934) and 17 C.F.R. § 240.14a-9 ("Rule 14(a)-9") by

Defendant China XD (the "Company Defendant").  In Count Two,

Plaintiffs allege violations of 15 U.S.C. § 78t ("Section 20(b)" of the Securities and Exchange Act of 1934) by all Defendants other than China XD, including Defendants FDL, FHI, and XD Engineering (the "Controlling Shareholders") as well as Defendants Han, Zhang, Zhai, Chen, and Huang (the "Individual Defendants"). (SAC ¶¶ 51-67.) In Count Three, Plaintiff alleges breach of fiduciary duty under Nevada law, and, in Count Four, Plaintiff alleges aiding and abetting breach of fiduciary duty under Nevada law, as against the Individual Defendants. (SAC ¶¶ 68-75.)

## PROCEDURAL BACKGROUND

After filing the initial Complaint on December 10, 2020, Plaintiff amended the Complaint on February 17, 2021 to include class claims. (ECF No. 19.) Schmitt then moved the Court to be appointed lead plaintiff on April 30, 2021, pursuant to 15 U.S.C. § 78u-4(a)(3)(B). (ECF No. 21.) Shortly thereafter, on May 3, 2021, two other groups of China XD shareholders moved the Court to be appointed lead plaintiff. (ECF Nos. 22, 23.) The Court denied all three motions on August 2, 2021 as moot because Schmitt indicated that he intended to file a Second Amended Complaint. The Court issued an order stating that "Plaintiff Schmitt shall file a Second Amended Complaint by August 16, 2021." (Aug. 2, 2021 Order.) Plaintiff filed the Second Amended Complaint on August 16, 2021, (ECF No. 39, "SAC.")

2

After filing the Second Amended Complaint, Plaintiff renewed his motion to be appointed lead plaintiff and, on February 4, 2022, Magistrate Judge Sanket J. Bulsara granted Plaintiff's unopposed motion.[1]  (ECF No. 57.)

Before the Court are Defendants' motions to dismiss the Second Amended Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6) and 15 U.S.C. § 78u-4, the Private Securities Law Reform Act ("PSLRA"), on the grounds that Plaintiff has failed to state claims upon which relief can be granted and that Plaintiff has failed to meet the heightened pleading requirement imposed by the PSLRA.  *See generally* (ECF Nos. 67, 78, 81.) Defendant China XD, the only Defendant named in Count One, moves to dismiss Count One.  (ECF Nos. 67, "China XD and Zhang Mem."; 71, "China XD and Zhang Reply.")   The Controlling Shareholders and the Individual Defendants move to dismiss Count Two.  (China XD and Zhang Mem.; ECF Nos. 78, "Contr. Def. and Han Mem."; 81, "Zhai, Chen, and Huang Mem."; China XD and Han Reply; ECF Nos. 76, "Contr. Def. and Han Reply"; 80, "Zhai, Chen, and Huang Reply.")   The Controlling Shareholders and the Individual Defendants also move to dismiss Count Three and Count Four.

---

[1] Pursuant to Magistrate Judge Bulsara's February 4, 2022 order, Plaintiff is Lead Plaintiff of a putative class of China XD shareholders pursuant to 15 U.S.C. § 78u-4(a)(3)(B).  Although Magistrate Judge Bulsara found that Plaintiff made a preliminary showing that two out of the four requirements for class certification under Fed. R. Civ. P. 23 were satisfied, (ECF No. 57 at 9-10) Plaintiff has not yet moved the Court for class certification pursuant to Fed. R. Civ. P. 23.  As such, the Court refers to Schmitt as an individual Plaintiff in this Memorandum and Order.

(China XD and Zhang Mem.; Contr. Def. and Han Mem; Zhai, Chen, and Huang Mem.; China XD and Zhang Reply.; Contr. Def. and Han Reply; Zhai, Chen, and Huang Reply.)  Plaintiff opposes all three of Defendants' motions to dismiss his claims.  (ECF No. 70, "Ptf. Opp.")

For the reasons set forth below, Defendant China XD's motion to dismiss Count One as well as the Controlling Shareholders' and the Individual Defendants' motions to dismiss Count Two are **GRANTED** and Plaintiff's claims under Section 14(a) and Section 20(a) are **DISMISSED** with prejudice.  The Controlling Shareholders' and Individual Defendants' motion to dismiss Count Three and Count Four are **GRANTED** and Plaintiff's claims under Nevada state law are **DISMISSED** without prejudice.

## FACTUAL BACKGROUND

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).  Pursuant to Fed. R. Civ. P. 12(b)(6) and the PSLRA, the Court reviews the operative Second Amended Complaint, accepting as true the factual allegations therein.  The Court draws all reasonable inferences in Plaintiff's favor. *Melendez v. City of New York*, 16 F.4th 992, 1010 (2d Cir. 2021).  To the extent Plaintiff alleges "legal conclusion[s] couched as factual

4

allegation[s]" however, the Court is not bound to accept such statements as true. *Drimal v. Tai*, 786 F.3d 219, 223 (2d Cir. 2015) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotation marks omitted).  Based on the foregoing, this Court accepts as true the following allegations.

### I.   The Parties

Plaintiff is a resident of Waterloo, Iowa and the beneficial owner of 52,327 shares of China XD common stock as of August 16, 2021.  (SAC ¶ 9.)  China XD, in which Plaintiff is invested, is a company that researches, develops, manufactures and sells modified plastics products that are used in the production of automobiles, railways, airplanes, ships, and electronic appliances.  (SAC ¶¶ 10, 23.)  China XD is a Nevada corporation that maintains a place of business in Queens, New York.  (SAC ¶ 10.)

According to Plaintiff, China XD is a leading producer of high polymer materials, which it primarily sells to automobile manufactures in China and the United Arab Emirates.  (SAC ¶ 24.) Plaintiff alleges that in 2009, China XD was included among on the Nasdaq as "the first high polymer material enterprise in greater China."  In 2016, China XD was listed in the Top Hundred Corporations of Chemical Industry by the China Petroleum and Chemical Industry Federation ("CPCIF").  (SAC ¶¶ 24 - 25.) Plaintiff asserts that more recently, China XD had begun

expanding its product offerings beyond the automobile industry,
an effort that resulted in "a rapid increase of customer orders
in non-automobile applications, evidenced by [] stable sales
growth[.]"  (SAC ¶ 26.)   Plaintiff alleges that although China
XD has maintained a "thriving, profitable business" for many
years and despite these efforts to expand its product offerings,
the COVID-19 pandemic resulted in significant setbacks to China
XD's business.  (SAC ¶ 24.)

According to Plaintiff, Defendant Han is the founder of
China XD and currently serves as the Chief Executive Officer
("CEO") and Chairman of the Board of Directors of China XD.
(SAC ¶ 11.)  Plaintiff alleges that Han is also the sole owner
and beneficiary of XD Engineering, through which Han owns
approximately 33,065,054 shares or 50.1% of China XD's
"outstanding Common Stock and control shares of China XD's Class
A Common Stock and Class B Common Stock."  (SAC ¶¶ 11, 17.)
Plaintiff further alleges that in December 2019, XD Engineering
purchased 500,000 additional China XD shares and that Defendant
Han's total China XD shareholdings, including the China XD
shares he owns through XD Engineering, comprise 70% of China
XD's total voting power.  (SAC ¶¶ 11, 17.)   Plaintiff contends
that Defendant Han is also the owner and sole director of
Defendant FDL, and FDL subsidiary, FHI.  (SAC ¶¶ 18-19.)
Plaintiff refers to the entities owned or controlled by

Defendant Han, including FDL, FHI, and XD Engineering, as the
"Controlling Shareholders."  (SAC ¶ 20.)

Defendants Zhang, Zhai, Chen, and Huang are members of the
Board of Directors of China XD.  (SAC ¶¶ 12-15.)  Defendant
Zhang is also the Chief Financial Officer ("CFO") of China XD.
(SAC ¶¶ 12-15.)   Plaintiff refers to Han, Zhang, Zhai, Chen,
and Huang as the "Director Defendants" and alleges that in
January 2020, the Director Defendants "had recently joined the
board [of directors]."  (SAC ¶ 49.)

## II.   **The January 2020 Proxy Statement**

On January 14, 2020, China XD filed a Form DEF 14A or
definitive proxy statement with the Securities and Exchange
Commission ("SEC").  The January 14, 2020 Form DEF 14A proxy
statement (the "Proxy"), sought approval from shareholders of a
2020 Stock Incentive Plan (the "2020 Plan" or the "Plan"), which
was incorporated into the Proxy by reference and also as an
attachment to the Proxy.[2]  (ECF No. 79-1, Zhai, Chen, Huang Def.
Mem., Matteo Decl., Ex. A., "Proxy" at 54-69.)  Prior to issuing
the Proxy, the China XD Board of Directors approved the Plan on
January 10, 2020.  (SAC ¶ 27.)  The Proxy proposed the Plan for

---

[2]  Defendants include the Proxy as Exhibit A to the Declaration of Joseph A.
Matteo.  (ECF No. 79-1, the "Proxy.") The Court finds that this document is
incorporated into the Second Amended Complaint by reference, and thus the
Court may consider it when deciding Defendants' motion to dismiss.  *See
Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230-31 (2d Cir. 2016) (courts may
consider on a motion to dismiss "any statements or documents incorporated in
[the SAC] by reference") (internal citation omitted).

a shareholder vote at the annual shareholder meeting, which took place on February 11, 2020.  (SAC ¶ 27.)

Plaintiff notes that, pursuant to the Proxy, "the Board [] strongly believe[d] that the approval of the 2020 Plan [would be] essential to the Company's success."  (SAC ¶ 30.)  In particular, Plaintiff quoted language from the Proxy stating the Board of Director's position that, because "[China XD's] employees are its most valuable assets[,] . . . the awards permitted under the 2020 Plan are vital to [China XD's] ability to attract and retain outstanding and highly skilled individuals in the extremely competitive labor markets in which the Company competes."  (SAC ¶ 37.)

The Proxy set forth the "notice of annual meeting of stockholders for a stockholder meeting to be held on February 11, 2020 to vote on, *inter alia*, approval of the [Plan]" and in particular, the issuance of "13,000,000 shares . . . to 'eligible' employees, directors and independent contractors."  (SAC ¶ 27.)  Prior to the Plan, on November 8, 2019, Plaintiff contends "China XD had 66,948,841 shares" such that the Proxy contemplated a "20% dilution" in the value of China XD's existing shares.  (SAC ¶ 28.)  Plaintiff alleges that at the same time China XD issued the Proxy seeking shareholder approval of the Plan, the China XD "stock price was crashing under the leadership of Defendants Han, Zhang" and non-party Quing Ma.

8

(SAC ¶ 28.)  Plaintiff further alleges that during this time
period, Defendants were secretly negotiating "a going private
merger."  (SAC ¶ 28.)

### III. The 2020 Stock Incentive Plan

The Plan, as outlined in the Proxy, consisted of two
components, (1) a stock issuance program, and (2) an option
grant program.  (SAC ¶ 29; Proxy at 56, 62.)  In total, the
shares reserved for issuance under the Plan amounted to
13,000,000 shares.  According to Plaintiff, the last time China
XD executed a Stock Incentive Plan was in 2009 (the "2009
Plan").  (SAC ¶ 32.)  The 13,000,000 shares reserved for
issuance under the 2020 Plan represented a 67% increase in the
amount of shares reserved, as compared to the 2009 Plan.  (SAC ¶
32) ("under [the 2009 Plan] the Board of Directors reserved
7,800,000 shares of common stock for issuance.").  Moreover,
Plaintiff asserts that since the time the 2009 Plan was
announced, the China XD share price had fallen by approximately
90%.  (SAC ¶ 33.)

#### A. The Stock Issuance Program

Plaintiff describes the stock issuance program as the
component of the Plan through which "eligible persons may, at
the discretion of the Plan Administrator, be issued shares of
Common Stock directly, either through the immediate purchase of
such shares or as a bonus for services rendered to the

9

Corporation (or any parent or Subsidiary)." (SAC ¶ 29.) The Proxy states that "Stock issuances [would] vest in accordance with the terms and conditions established by the Board in its sole discretion" and that "[t]he Board [would] determine the number of shares granted pursuant to an Award of stock." (SAC ¶ 37.) The stock issuance program is described in further detail in the Proxy and also in the Plan, which is attached to the Proxy. (Proxy at 62-64.)

### B. The Option Grant Program

Plaintiff asserts that under the option grant program, "eligible persons [could], at the discretion of the Plan Administrator, be granted options to purchase shares of Common Stock[.]" (SAC ¶ 29.) Plaintiff quotes portions of the Proxy that describe the option grant program and which state, in relevant part, that "the Board is able to grant nonqualified stock options and incentive stock options under the [Plan]" and that "the Board determines the number of shares subject to each option." (SAC ¶ 37.) The option grant program is described in further detail in the Proxy and also in the Plan, which is attached to the Proxy. (Proxy at 56-62.)

### C. Administration of the Plan

According to the Proxy, the Board of Directors maintained authority to "administer the 2020 Plan." (SAC ¶ 37.) However, the Board of Directors were authorized, under the Plan, to

delegate "any or all administrative functions otherwise
exercisable by the Board . . . to a committee of one or more
Board members appointed by the Board to exercise one or more
administrative functions under the plan."  (SAC ¶ 37.)  *See also*
(SAC ¶ 29) ("[u]nder the Plan, the administrator could delegate
[] decisions to, inter alia, any committee of the Board.")

### D. Vesting Provision

Plaintiff notes that, according to the Proxy, the Plan
"granted participants 'full stockholder rights' with respect to
any shares of common stock issued to the participant . . .
whether or not the participant's interest in those shares []
vested[.]"  (SAC ¶ 31) (quoting Proxy at 62.)  Based on this
vesting provision, the participants of the stock issuance
program "[would] have the right to vote [on the basis of] such
shares and to receive any regular cash dividends paid on such
shares.'"  (SAC ¶ 31) (quoting Proxy at 62.)  Essentially, this
permitted participants to maintain voting power with respect to
shares that they were not yet the beneficial owners of, which
Plaintiff alleges is a "violation of Nasdaq rule 5640[.]"  (SAC
¶ 39.)

### E. Financing

Plaintiff also asserts that the Plan included a financing
provision, which offered "a loan from [China XD] to purchase
shares or options secured only with the options or stock[.]"

11

(SAC ¶ 40.)  The Proxy states, in relevant part, that "[t]he
Plan Administrator may permit any [] Participant to pay the
option exercise price under the Option Grant Program or the
purchase price for shares issued under the Stock Issuance
Program by delivering a full-recourse, interest bearing
promissory note secured by the purchased shares" and that the
"remaining terms of the note" would be set upon the Plan
Administrator's consideration of any "potential adverse tax and
accounting consequences[.]"  (Proxy at 64.)

## IV.  The Contemplated Merger

Plaintiff alleges that "[o]nly four months after approval
of the [Plan], [Defendants] Han and XD Engineering, facilitated
by the Director Defendants, caused China XD to enter into a
going private Merger at a price per share of $1.20 per share to
minority shareholders[.]"  (SAC ¶46.)  Plaintiff notes that this
share price is "nearly 50% less than [XD Engineering's] December
2019 purchase of shares from certain of its officers and
directors."  (SAC ¶ 46.)  Plaintiff asserts that neither the
Proxy nor the Plan gave notice to shareholders of the
contemplated merger.  (SAC ¶ 47.)   No other SEC filings made
during the relevant time period made any reference to the
contemplated merger either, according to Plaintiff.  (SAC ¶ 47.)

Plaintiff points to the change-of-control provision in the
Plan that protects participants' interests in the event of a

change of control, as evidence of China XD's awareness of the
anticipated merger.  (SAC ¶¶ 40 – 41.)  Ultimately, no merger
was ever consummated.

**V.   Approval of the Plan**

The Plan "was approved by a vote of shareholders on
February 11, 2020 which included voting by the majority owners
of China XD[.]"  (SAC ¶ 43.)  According to Plaintiff,
"Defendants cashed in on the [Plan] when the Board approved a
grant of 3,600,000 common shares to themselves (according to an
August 28, 2020 SEC filing) which vested immediately (according
to a September 9, 2020 Proxy) at no cost to the Defendants Han,
Zhang, and Quing Ma, China XD's Chief Operating Officer."  (SAC
¶ 44) (emphasis omitted).  Of the 3,600,000 common shares
alleged to have been issued to Defendants, Plaintiff contends
1,800,000 were issued to Defendant Han and 500,000 were issued
to Defendant Zhang.  (SAC ¶ 45.)  Plaintiff alleges that the
primary beneficiaries of the Plan "[were] not [China XD's]
public stockholders."  (SAC ¶ 48.)  Rather, the beneficiaries
were, according to Plaintiff, conflicted directors and executive
officers.  (SAC ¶ 48) ("[t]he Board and Company's executive
officers . . . secured unique benefits for themselves not
available to Plaintiff and the public stockholders of China XD
in the form of continued employment, board seats, and the
ability to participate in China XD's recovery as the auto

13

industry outlook worldwide continues to improve despite the pandemic"). (SAC ¶ 48.)

Plaintiff alleges that in the early spring of 2020, after the announcement of the approval of the Plan, China XD's stock declined in value by approximately 50%. (SAC ¶ 42.) Plaintiff also acknowledges that this timing coincides with the onset of the COVID-19 pandemic, which had substantial adverse impacts on China XD's business. (SAC ¶ 24.)

## LEGAL STANDARD

"The PSLRA dictates the pleading standards for Plaintiffs' claim under" any provision of the SEC Act of 1934, including Section "14(a) and Rule 14a-9," as well as Section 20(a). *Bond Opportunity Fund v. Unilab Corp.*, No. 99-cv-11074, 2003 WL 21058251, at *3 (S.D.N.Y. May 9, 2003). "Plaintiff faces a high pleading standard in this case," *Bisel v. Acasti Pharma, Inc.*, No. 21-cv-6051, 2022 WL 4538173, at *6 (S.D.N.Y. 2022), as compared to claims subject only to Fed. R. Civ. P. 12(b)(6), because the claims arise under the PSLRA.

In order to plead violations of Section 14(a) and Section 20(a), based on alleged omissions, Plaintiff must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the [Plaintiff] shall state with particularity all facts on which

14

the belief is formed."  15 U.S.C. § 78u-4(b)(1).  The PSLRA, for

its part, has imposed heightened pleading requirements and a

loss causation requirement upon 'any private action' arising

from the Securities Exchange Act."  *Bisel*, 2022 WL 4538173, at

*6 (quoting *In re Bank of Am. Corp. Sec., Derivate, & Emp. Ret.

Income Sec. Act (ERISA) Litig.*, 757 F. Supp. 2d 260, 286

(S.D.N.Y. 2010)).

**DISCUSSION**

I.   **Count One:  Section 14(a) and Rule 14a-9 Claims Against
     China XD**

Section 14(a) is the provision of the SEC Act of 1934 that

governs a public company's duties with respect to the proxy

materials issued to shareholders.  Specifically, Section 14(a)

makes it "unlawful for any person . . . in contravention of such

rules and regulations as the Commission may prescribe as

necessary . . . to solicit . . . any proxy or consent or

authorization in respect of any security[.]"  15 U.S.C. §

78n(a)(1).  Rule 14a-9, which is promulgated under Section

14(a), states, in relevant part, that "[n]o solicitation . . .

shall be made by means of any proxy statement . . . which, at

the time and in light of the circumstances under which it is

made, is false or misleading with respect to any material fact,

or which omits to state any material fact necessary in order to

make the statements therein not false or misleading[.]"  17

C.F.R. § 240.14a-9.  "To state a claim under Section 14(a) and

15

Rule 14a-9(a), a plaintiff must allege that: [i] a proxy statement contained [a] material . . . omission, which [ii] caused plaintiffs' injury, and [iii] that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link [in] the accomplishment of the transaction." *Bisel*, 2022 WL 4538173, at *7 (internal quotation marks and citation omitted). "The plain language of Rule 14a-9 requires a plaintiff to show both materiality and a false or misleading statement as a result of the omission. Omission of information from a proxy statement will violate these provisions if either the SEC regulations specifically require disclosure of the omitted information . . . or the omission makes other statements in the proxy statement materially false or misleading." *Bisel*, 2022 WL 4538173, at *8 (internal citation omitted).

A fact is material "if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote." *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1084 (1991) (internal citation omitted). In particular, the omission of a fact is material "if either the SEC regulations specifically require disclosure of the omitted information in a proxy statement, or the omission makes other statements in the proxy statement materially false or misleading." *Resnik v. Swartz*, 303 F.3d 147, 151 (2d Cir.

16

2002).   Omitted facts "need not be important enough that [they] 'would have caused the reasonable investor to change his vote' . . . Rather, the information need only be important enough that it would have assumed actual significance in the deliberations of the reasonable shareholder." *Folger Adam Co. v. PMI Industries, Inc.*, 938 F.2d 1529, 1533 (2d Cir. 1991) (quoting *TSCI Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976)).   Although the question of materiality is "a mixed question of law and fact," *TSCI Industries*, 426 U.S. at 450, "the Court may dismiss for lack of materiality [] if the facts that are alleged to have been omitted or misleading are 'so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance.'" *Bond Opportunity Fund v. Unilab Corp.*, 99-cv-11074, 2003 WL 21058251, at *4 (S.D.N.Y. May 9, 2003) (quoting *In re: MCI Worldcom, Inc. Sec. Litig.*, 93 F. Supp. 2d 276, 282 (E.D.N.Y. 2000)

In addition to demonstrating the materiality of an alleged omission, a plaintiff must plead loss causation to state a claim under Section 14(a).   Plaintiff must point to either (1) a negative market reaction "to a corrective disclosure of the alleged fraud or that [his] loss was caused by the materialization of the risk concealed by the fraud." *In re Liberty Tax, Inc. Sec. Litig.*, 435 F. Supp. 3d 457, 471

(E.D.N.Y. 2020).  Plaintiff must "disaggregate those losses
caused by changed economic circumstances, changed investor
expectations, new industry-specific or firm-specific facts,
conditions, or other events, from disclosures of the truth
behind the alleged misstatements."  *In re Flag Telecom Holdings,
Ltd. Sec. Litig.*, 574 F.3d 29, 36 (2d Cir. 2009) (internal
citation omitted).  An alleged "drop in stock price following an
announcement of bad news" is insufficient, without more, to
prove loss causation.  *Liberty*, 435 F. Supp. 3d at 471 (internal
citation omitted).

### A. Plaintiff's Allegations of Material Omissions

Although Plaintiff asserts that "the proxy statements
soliciting the merger were defective and in violation of SEC
Rule 14 and Rule 14a-9 because they contained untrue statements
of fact," (SAC ¶ 55) Plaintiff does not identify any purportedly
untrue statements in the Proxy.  Plaintiff does, however,
identify four alleged omissions.  First, Plaintiff alleges that
the Proxy was "materially misleading in that it failed to
disclose the dilutive effects of the issuance of options,
separate and apart from the vesting of stock or conversion of
the options to stock."  (SAC ¶ 38.)  Plaintiff alleges that this
warning was included in the commentary to Nasdaq Rule 5635, but
that Defendants had a duty to include the same warning in the
Proxy.  (SAC ¶ 38.)  Second, Plaintiff alleges that the Proxy

failed to inform shareholders of the vesting provisions of the Stock Issuance Program in the Plan, whereby plan participants would obtain full stockholder rights whether or not their interest in the relevant shares vested.  (SAC ¶ 39.)  Plaintiff alleges that this vesting provision also violates Nasdaq Rule 5640.  (SAC ¶ 39.)  Third, Plaintiff alleges that the Proxy failed to inform class members that Plan participants could obtain a loan from China XD to purchase shares or options under the Plan and that the loan could be secured by the very shares and options the loan was being used to purchase.  (SAC ¶ 40.) Fourth, Plaintiff alleges that the Proxy failed to notify investors of an upcoming merger that was purportedly being negotiated at the time China XD issued the Proxy.  (SAC ¶ 41.) In connection with Plaintiff's allegation that the Proxy omitted information about the anticipated merger, Plaintiff also specifies that the Proxy failed to disclose "material transactions by China XD in anticipation of taking China XD private" and omitted information about Defendant Han's and XD Engineering's "plan to take China XD private."  (SAC ¶ 57.) Despite three iterations of the Complaint, Plaintiff fails to plead sufficient facts under PSLRA and Fed. R. Civ. P. 12(b)(6) to state a Section 14(a) claim with respect to any of the four alleged omissions.

**1. The Dilutive Effects of the 2020 Plan**

Plaintiff's first allegation of a material omission in the January 2020 Proxy relates to the alleged failure "to disclose the dilutive effects of the" Plan.  (SAC ¶ 38.)  Plaintiff acknowledges that the shareholder approval of the Plan was secured, "pursuant to Nasdaq Rule 5635(c)" and that "the commentary to Nasdaq Rule 5635[] explicitly warns: 'these plans can potentially dilute shareholders' interests[.]'"  (SAC ¶ 38.) Plaintiff notes, however, that this warning was not independently included in the Proxy and that "it would take a financial analyst to spot the tension between the [Nasdaq 5635 warning] and the [January 2020 Proxy]" such that the January 2020 Proxy was misleading by omission, notwithstanding the Nasdaq 5635 warning.  (Ptf. Obj. at 9–10.)

Defendant China XD argues, first, that the dilutive effect of the Plan is a self-evident feature of any stock issuance plan and is, therefore, so obvious that reasonable minds could not differ on the immaterial nature of such a warning.  (China XD and Han Mem. at 17–18.)  Defendant China XD further states that even if such a warning were necessary, the warning that exists in the Nasdaq 5635 and the incorporation, by reference, of the Nasdaq 5635 commentary, constitutes sufficient notice of the dilutive effect.  (China XD and Han Mem. At 17–18.)

First, the Court addresses whether the absence of a specific warning in the Proxy, regarding the dilutive effect of

the Plan, is a material omission under Section 14(a).  Plaintiff

does not appear to allege that the extent of dilution or any

other specific characteristic of the dilution was omitted in

violation of Section 14(a).  *See* (SAC ¶ 38) (the Proxy "failed

to disclose the dilutive effects of the issuance options . . .

In fact, [] the [] Nasdaq Rule 5635 . . . commentary []

explicitly warns: 'these plans can potentially dilute

shareholders' interests.'  That warning was not included in the

Proxy.")  Plaintiff's reference to the warning in the Nasdaq

5635 commentary, presumably as an example of the type of warning

Defendants failed to include in the Proxy, suggests that,

according to Plaintiff, the fact of the dilutive effect itself

should have been disclosed in the Proxy pursuant to Section

14(a).  Section 14(a), however, does not contemplate or impose

such a requirement.  A "corporation is free to enter into

numerous transactions, all of which may result legitimately in

the dilution of the stake of present equity holders."  *F5

Capital v. Pappas*, 856 F.3d 61, 72 (2d Cir. 2017) (citing

*Feldman v. Cutaia*, 956 A.2d 644, 656 (Del. 2008)) ("dilution is

a natural and necessary consequence of investing in a

corporation.").  Furthermore, the Proxy advises investors that

China XD was "seeking approval of 13,000,000 shares under the

2020 Plan."  (SAC ¶ 37.)  Plaintiff asserts that "[a]s of

November 8, 2019, China XD had 66,948,841 shares outstanding."

21

(SAC ¶ 27.)   A reasonable shareholder would understand that a dilutive effect is the "natural and necessary consequence" of an infusion of 13,000,000 shares into an existing 66,948,841 share count. *Feldman*, 956 A.2d at 656.   Indeed, Plaintiff himself seems to have understood the dilutive consequence of the proposed issuance of 13,000,000 shares. *See* (SAC ¶ 28) ("the [2020 Stock Incentive Plan] called for 13,000,000 shares for issuance" and "China XD had 66,948,841 shares outstanding. Accordingly, the 2020 Stock [Incentive] Plan threatened shareholders with 20% dilution[.]")   Plaintiff does not cite any support for his contention that an explicit warning of dilutive effects in addition to the explanation within the proxy of the precise number of shares that would be added to the total share count, is required under Section 14(a).   Under the circumstances, such a warning is "'so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance.'"   *In re: MCI Worldcom, Inc. Sec. Litig.*, 93 F. Supp. 2d 276, 282 (E.D.N.Y.) (quoting *Koppel v. 4987 Corp.*, 167 F.3d 125, 133 (2d Cir. 1999).

Moreover, Plaintiff's assertion that an explicit warning of dilutive effects should have been included in the Proxy, notwithstanding the inclusion of such a warning in the Nasdaq 5635 commentary, is exactly the sort of "nitpicking" that the Second Circuit has warned "should not become the name of the

22

game" in Section 14(a) cases. *Kennecott Copper Corp. v. Curtiss-Wright Corp.*, 584 F.2d 1195, 1200 (2d Cir. 1978) (internal citation omitted). "'[T]here is no duty to disclose information to one who reasonably should be aware of it.'" *Seibert v. Sperry Rand Corp.*, 586 F.2d 949, 952 (2d Cir. 1978)(internal citation omitted); *see also St. Clair-Hibbard v. American Finance Trust, Inc.*, 812 F. App'x 36, 38 (2d Cir. 2020) ("[Defendant] had no duty to disclose information that its shareholders (and the general market) already knew . . . [including information that] credit rating agencies, industry analysis, and the SEC have all issued bulletins . . . warning investors" about). Section 14(a) does not absolve Plaintiff of his responsibility to review relevant investor materials in advance of a shareholder vote. *See United Paperworks Intern. Union*, 985 F.2d at 1998 ("[i]n considering a claim of material omission in violation of Rule 14a-9, [] the court ordinarily should not consider the proxy statement alone . . . the 'total mix' of information may include data sent to shareholders by a company in addition to its proxy materials . . . [and] proxy statements need not 'duplicate . . . information reasonably available to the shareholders") (internal citation omitted).

Plaintiff does not allege that the reference to dilutive effects in the Nasdaq 5635 commentary was "buried by being dispersed among or immersed in irrelevant data." *Rodman v.*

*Grant Foundation*, 608 F.2d 64, 70 (2d Cir. 1979).  Nor does Plaintiff allege that the Nasdaq 5635 commentary was unavailable to him.  *See United Paperworkers Intern. Union v. International Paper Co.*, 985 F.2d 1190, 1199 (2d Cir. 1993) ("[c]orporate documents that have not been distributed to the shareholders entitled to vote on the proposal should rarely be considered part of the total mix of information reasonably available to those shareholders.")  Instead, Plaintiff asks the Court to consider his responsibility to review relevant investor materials other than the Proxy, as a "challenge [to his] critical wits."  (Ptf. Obj. at 10) (citing *Virginia Bankshares, Inc.*, 501 U.S. at 1097).  The Court trusts that Plaintiff's critical wits are not so easily challenged by commonsense knowledge that issuing shares "'can potentially dilute shareholders' interest.'"  (SAC ¶ 38) (quoting Nasdaq 5635(c) Commentary.)

Plaintiff was explicitly informed in the Nasdaq 5635(c) commentary of the fact that dilutive effects can result from shareholders' adoption of the Plan.  That same result was readily surmisable from the statements in the Proxy itself.  Accordingly, Plaintiff "w[as], in fact, given the information from which [he] could have concluded" the logical result of the Plan.  "That is all that [Section] 14(a) requires."  *Bond Opportunity*, 2003 WL 21058251, at *7; *see also In re GTx, Inc.*

24

*Shareholders Litig.*, No. 19-cv-3239, 2020 WL 3439356, at *3
(S.D.N.Y. Jun. 23, 2020) ("[w]hether a misrepresentation is
material is determined by the 'total mix' of information, not
the alleged misstatement in isolation") (quoting *Koppel*, 167
F.3d at 131).

Plaintiff, accordingly, fails to plead sufficient facts
under PSLRA and Fed. R. Civ. P. 12(b)(6) to state a Section
14(a) claim against Defendant China XD with respect to the
alleged omission from the Proxy of an explicit warning regarding
the consequence of a dilutive effect on existing shares
resulting from the Plan.

### 2. The Vesting Provisions of the 2020 Plan

Plaintiff's second allegation regarding a material omission
under Section 14(a) relates to the alleged failure to disclose
the vesting provisions of the Plan.  (SAC ¶ 39.)  Specifically,
Plaintiff alleges that "the Proxy failed to inform class members
[that] . . . the Plan [] would allow [] participants to have
'full stockholder rights with respect to any shares of Common
Stock issued to the Participant under the Stock Issuance
Program, whether or not the Participant's interest in those
shares is vested.'"  (SAC ¶ 39) (quoting Proxy at 62.)
Remarkably, Plaintiff quotes the very language from the Proxy
that he alleges "the Proxy failed to inform class members of[.]"
(SAC ¶ 39.)

Plaintiff states, in his opposition memorandum, that although the "bare language of the Proxy discloses that a non-vested grantee will have 'stockholder rights' . . . nowhere does the Proxy explain to shareholders that those 'rights' include voting rights which can lift the overall insider's ownership from 50.1% to over 70% giving insiders a supermajority." (Ptf. Opp. at 10.) Yet, the next sentence in the Proxy, which Plaintiff also quotes, states "[a]ccordingly the participant shall have the right to vote such shares and to receive any regular cash dividends paid on such shares." (SAC ¶¶ 31, 37) (quoting Proxy at 62.) To the extent Plaintiff seeks to convert his claim that Defendants failed to disclose the vesting provision of the Plan in the Proxy into a claim that Defendant Han had a duty to explicitly enumerate the percentage of shares he would hold, as compared to the voting power of those shares, following the 2020 Plan, or to assert a new claim to this effect, the Court declines to review such a claim, which was "raised . . . [for the first time] in [Plaintiff's] submissions in opposition to defendants [] motion to dismiss" and which Plaintiff failed to allege in his Complaint, Amended Complaint, or Second Amended Complaint. *Mathie v. Goord*, 267 F. App'x 13, 14 (2d Cir. 2008) ("to the extent [Plaintiff] raised a new [] challenge in his submissions in opposition to [the] motion to

dismiss . . . we [] agree . . . that the amended complaint did not encompass that claim.").

At risk of belaboring the obvious, a statement quoted directly from a proxy statement, cannot also be a material omission from that same proxy statement. *See Silberstein v. Aetna, Inc.*, No. 13-cv-8759, 2015 WL 1424058, at *12 (S.D.N.Y. Mar. 26, 2015) ("[e]ven taking Plaintiff's factual allegations as true and applying the materiality standard that governs at the motion to dismiss stage . . . Plaintiff's allegations are facially insufficient to state a claim because. . . the [alleged omission] was disclosed on the face of the [] Proxy Statement.")

Plaintiff, accordingly, fails to plead sufficient facts under the PSLRA and Fed. R. Civ. P. 12(b)(6) to state a Section 14(a) claim with respect to the alleged omission from the Proxy of information regarding the vesting provisions of the Stock Issuance Program in the Plan, because that information is contained in the Proxy.

### 3. The China XD Loan Available to 2020 Plan participants

Plaintiff asserts a third material omission under Section 14(a), the "fail[ure] to inform class members that option or stock grantees under the plan could get a loan from [China XD] to purchase shares or options secured only with the options or stock itself and that such loan could include the amount of taxes due." (SAC ¶ 40.)  Here, Plaintiff again references

information that was disclosed and available to him in the
Proxy.  Specifically, Plaintiff quotes from the financing
provision of the Plan, which was included as an attachment to
and by reference in the Proxy. *See* (Ptf. Opp. at 10) ("'[t]he
Plan Administrator may permit any . . . Participant to pay the
option exercise price via a note secured by the purchased
shares' in an amount equal to the purchase price plus any
applicable income and employment tax liability incurred by the
Optionee") (quoting Proxy at 64.)  With respect to the alleged
duty to disclose financing options available to Plan
participants, the information included in the Plan itself, which
was provided to Plaintiff as an attachment to the Proxy, is part
of "the 'total mix' of information . . .  'reasonably available
to [Plaintiff].'"  *United Paperworks Intern. Union*, 985 F.2d at
1998 (internal citation omitted).

Accordingly, Plaintiff fails to plead sufficient facts
under PSLRA and Fed. R. Civ. P. 12(b)(6) to state a Section
14(a) claim with respect to the alleged omission of information
regarding the availability of financing, as described in the
"Financing" section of the Plan.

### 4. The Anticipated Merger

Plaintiff's fourth allegation of a material omission
pursuant to Section 14(a) is the alleged "fail[ure] to warn or
notify of an upcoming plan for a going private merger[.]"  (SAC

28

¶ 41.)  Plaintiff cites the "favorable provision for participants in the event of a change of control" as an indication that "Defendants were well aware that a change in control was imminent" and that the Proxy omitted "any plans or ideas of a going private merger which at the time was being planned."  (SAC ¶ 41.)  Plaintiff notes that "four months after the approval of the [Plan]" and five months after the publication of the Proxy, China XD "enter[ed] into a going private Merger[.]"  (SAC ¶ 47.)  Subsequent press coverage clarifies that the merger that Plaintiff alleges China XD "enter[ed] into" was not consummated.[3]

The Supreme Court has held that there is no bright line rule regarding the materiality of merger negotiations under Section 14(a) because, "where . . . the [negotiation process in anticipation of a potential merger] is contingent or speculative in nature, it is difficult to ascertain whether the 'reasonable investor' would have considered the omitted information significant at the time." *Basic Inc. v. Levinson*, 485 U.S. 224, 232 (1988).  Even assuming the materiality of the going private merger, however, Plaintiff fails to adequately plead loss

---

[3] The Court takes judicial notice of this fact.  See *Arkansas Public Employees Retirement System v. Bristol-Myers Squibb Co.*, 28 F.4th 343, 352 (2d Cir. 2022) ("it is proper to take judicial notice of the fact that press coverage, prior lawsuit, or regulatory filings contain[] certain information"); *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) ("on a motion to dismiss, the Court may consider matters of which judicial notice may be taken.").

causation resulting from an omission in the Proxy regarding
purported merger negotiations.

Plaintiff alleges that following the shareholder approval
of the Proxy on February 11, 2020, China XD's stock declined in
value by approximately 50%. (SAC ¶ 42.) Notwithstanding the
fact that Plaintiff fails to allege facts establishing a causal
connection between the decline in China XD's share price and the
alleged "plans or ideas of a going private merger," (SAC ¶ 41)
Plaintiff fails to allege any basis on which the Court may
disaggregate the drop in China XD's share price from the highly
relevant market events at the time. Indeed, Plaintiff
acknowledges that the timing of the adoption of the Plan
coincides with the onset of the COVID-19 pandemic and that the
pandemic had significant adverse impacts on China XD's business.
(SAC ¶ 24.) Moreover, Plaintiff does not articulate any theory
of loss in connection to the alleged Section 14(a) omissions,
even as it relates to a claim for damages. Instead, Plaintiff
seeks only "an order [of] forfeiture of all shares granted to
insiders" under the Plan. (SAC ¶ 60.) Plaintiff does not
allege any facts establishing "a causal link between the alleged
[omission] and the economic harm [that he] ultimately
suffered[.]" *Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d
161, 172 (2d Cir. 2005). Accordingly, Plaintiff fails to plead
sufficient facts under PSLRA and Fed. R. Civ. P. 12(b)(6) to

state a Section 14(a) claim with respect to the alleged omission

of information about the alleged merger negotiations.

## II.  Count Two:  Plaintiff's Section 20(a) Against the Controlling Shareholders and Individual Defendants

Section 20(a) of the SEC Act of 1934 enables plaintiffs to

hold individuals liable for a company's violations of the SEC

Act of 1934 if the individual acted as a control person.  *See* 15

U.S.C. § 78t ("[e]very person who . . . controls any person

liable under any provision of this chapter or of any rule or

regulation thereunder shall also be liable jointly and severally

. . . to the same extent as such controlled person[.]")

Plaintiff brings claims against the Individuals Defendants

under Section 20(a), alleging that "[t]he Individual Defendants

acted as controlling persons of China XD within the meaning of

Section 20(a).  "To establish a prima facie case of control

person liability [under Section 20(a)], a plaintiff must show

(1) a primary violation by the controlled person, (2) control of

the primary violator by the defendant, and (3) that the

defendant was, in some meaningful sense, a culpable participant

in the controlled person's fraud."  *ATSI Communications, Inc. v.*

*Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007) (internal

citation omitted).  Plaintiff alleges that the liability of the

Controlling Shareholders and Individual Defendants under Section

20(a) is derived from a primary violation of Section 14(a) by

China XD.  However, "[w]here there is no primary violation,

31

there can be no 'control person' liability under Section 20(a)."
*Monroe Cnty. Empl.s' Retirement Sys. v. YP Sociedad Anonima*, 15
F. Supp. 3d 336, 351 (S.D.N.Y. 2014) (internal citation
omitted).  The alleged primary violation in connection to which
Plaintiff brings a Section 20(a) claim is the "incomplete and
misleading statements contained in the Proxy Materials[.]"
Because Plaintiff has failed to state a claim under the PSLRA
and Fed. R. Civ. P. 12(b)(6) with respect to his Section 14(a)
claim of alleged omissions, there is no primary violation.
Accordingly, Plaintiff's Section 20(a) claim is dismissed.

### III. Counts Three and Four:  Plaintiff's Remaining State Law Claims Against the Individual Defendants

In Count Three, Plaintiff asserts a state common law claim
for breach of fiduciary duties under Nevada law against the
Individual Defendants and the Controlling Shareholders.  In
particular, Plaintiff cites the "fiduciary duties [of the
Individual Defendants] . . . to ensure that the majority owners
did not propose to enter into unfair transactions" and the
"fiduciary duties [of the Controlling Shareholders] to minority
shareholders to avoid self-dealing."  (SAC ¶ 70.)   In Count
Four, Plaintiff also asserts a claim against the Individual
Defendants for aiding and abetting breach of fiduciary duties,
and asserts that "[e]ach of the Individual Defendants knowingly
participated in breaches of fiduciary duty by other Defendants

32

and thus, is liable for aiding and abetting fiduciary breaches."
(SAC ¶ 74.)

"Claims of breach of fiduciary duty to a corporation arise
under the law of the state of incorporation[,]" which, in this
case, is Nevada.  *H.S.W. Enterprises, Inc. v.l Woo Law Oak,
Inc.*, 171 F. Supp. 2d 135, 143 (S.D.N.Y. 2001) (citing *Walton v.
Morgan Stanley & Co.*, 623 F.2d 796, 798 (2d Cir. 1980).  As
noted by Plaintiff, the Court has supplemental jurisdiction over
his Nevada state law claims pursuant to 28 U.S.C. § 1367.   28
U.S.C. § 1367(c) states, in relevant part, that "district courts
may decline to exercise supplemental jurisdiction over a claim
if . . . (3) the district court has dismissed all claims over
which it has original jurisdiction."  The Second Circuit has
held that "'if the federal claims are dismissed before trial,
even though not insubstantial in a jurisdictional sense, the
state claims should be dismissed as well.'"  *Castellano v. Board
of Trustees, et al.*, 937 F.2d 752, 758 (2d Cir. 1991) (internal
citation omitted).  In deciding whether to dismiss state law
claims under 28 U.S.C. § 1367(c)(3), courts "balance the 'values
of judicial economy, convenience, fairness, and comity.'"
*Norton v. Town of Brookhaven*, No. 22-cv-1015, 2023 WL 3477123,
at *4 (2d Cir. May 16, 2023) (citing *Kolari v. N.Y.-Presbyterian
Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006)).  "[I]n the usual case
in which all federal-law claims are eliminated before trial,"

33

however, the Supreme Court has advised that "the balance of factors to be considered . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 n. 7 (1988); *see also United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966) ("[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.")

Here, although Plaintiff commenced this action in 2020, discovery has not yet commenced[4] and the parties have not articulated a federal interest at stake in Count Three and Count Four of Plaintiff's Second Amended Complaint that justifies the continued exercise of supplemental jurisdiction absent existing federal claims.  Nor "can [the Court] discern [any] extraordinary inconvenience or inequity occasioned by permitting the [Nevada] claims to be refiled in state court where they will be afforded a sure-footed reading of applicable state law." *Kolari*, 455 F.3d at 123 (quoting *Gibbs*, 383 U.S. at 726). Although Plaintiff's state law claims do not raise "novel or unresolved questions of state law," district courts in this

---

[4] Pursuant to the Court's April 19, 2021 Order, discovery has been stayed, pursuant to the PSLRA in light of the motion to dismiss.  *See* (April 19, 2021 Order) (citing *Sedona Corp. v. Ladenburg Thalmann*, No. 03-cv-3120, 2005 WL 2647945, at *2 n.1 (S.D.N.Y. Oct. 14, 2005) ("There is no dispute that the PSLRA stay of discovery applies when an initial motion to dismiss is contemplated, but has not yet been filed."))

circuit routinely decline to exercise supplemental jurisdiction over state breach of fiduciary duty claims. *See Tchernitsky v. Pigott*, No. 16-cv-0418, 2019 WL 1492908, at *3 (E.D.N.Y. Mar. 31, 2019) ("[c]onsidering the [*Cohill*] factors, there is no justifiable reason for the Court to exercise supplemental jurisdiction over Plaintiff's remaining state law claims"); *Bongiorno v. Baquet*, No. 20-cv-7288, 2021 WL 4311169, at *22 (S.D.N.Y. 2021) ("declin[ing] to exercise supplemental jurisdiction over [Plaintiff's] state-law claims," including breach of fiduciary duty, where "Plaintiffs' RICO claim [was] dismissed] for failure to state a claim")   This is the "usual case" where courts decline to exercise supplemental jurisdiction, as contemplated by the Supreme Court in *Cohill*. Accordingly, the Court declines to exercise supplemental jurisdiction in light of its decision to dismiss Plaintiff's federal claims under Section 14(a) and Section 20(a).  Count Three and Count Four are dismissed without prejudice.

<u>**CONCLUSION**</u>

For the foregoing reasons, Defendant China XD's motion to dismiss Count One is **GRANTED**.  The Controlling Shareholders' and the Individual Defendants' motions to dismiss Count Two are **GRANTED**.  Plaintiff's claims in Count One, under Section 14(a), and in Count Two, under Section 20(a), are **DISMISSED** with

prejudice.  The Controlling Shareholders' and Individual
Defendants' motion to dismiss Count Three and Count Four are
**GRANTED** and Plaintiff's claims in Count Three and Count Four,
under Nevada state law, are **DISMISSED** without prejudice.

Although the Second Circuit has advised that "the usual
practice upon granting a motion to dismiss [is] to allow leave
to replead," *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d
42, 48 (2d Cir. 1991) (internal citation omitted), Plaintiff has
already been granted leave to amend his Complaint twice.
Accordingly, the Court will not grant further leave to amend.
*See Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir.
2008) ("leave to amend, though liberally granted, may properly
be denied for . . . failure to cure deficiencies by amendments
previously allowed") (internal citation omitted).

The Clerk of Court is respectfully requested to enter the
judgement dismissing all claims against all Defendants.

**SO ORDERED.**

Dated: September 29, 2023
       Brooklyn, New York

_____
KIYO A. MATSUMOTO
United States District Judge
Eastern District of New York

36